**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | |
|---|---|
| Audra Smith, Individually, and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>South Carolina State University,<br><br>      Defendant. | C/A No.: 5:22-cv-00567-SAL-PJG<br><br>**PLAINTIFF'S ANSWERS TO LOCAL RULE 26.03 INTERROGATORIES** |

In compliance with Local Rule 26.03 DSC, counsel for the Plaintiff submits the following information:

**(1) A short statement of the facts:**

**RESPONSE:**

Plaintiff is the former women's basketball coach at South Carolina State University. She was terminated one day after this lawsuit was filed.

This lawsuit alleges individual and class claims. The lawsuit alleges that the female athletes receive disproportionately lower/lower quality financial aid, dollars for recruiting, money for coaching salaries, number of coaches per team, gear, supplies, and facilities than their male counterparts.

As to Plaintiff's team, the lawsuit alleges Plaintiff received less funding for coaches and travel, that the Plaintiff's team was allotted money for fewer coaches overall in comparison to the men's basketball team, and that the Plaintiff's team was given reduced academic support, lower quality access to facilities, lower quality gear and equipment in comparison to the men's basketball team.

1

As to the Plaintiff in particular, the lawsuit alleges that she is paid considerably less than her male counterparts including the men's basketball coach without a justifiable reason at law, treated worse than her male counterparts, and that she was retaliated against with an intra-season suspension because she requested information, pursuant to SCFOIA, that relates to the Title 9 violations at issue in this lawsuit.

**(2) The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony.**

**RESPONSE:**

1. Audra Smith, Plaintiff, is expected to testify as to all aspects of her case.
2. Stacy Danley, Defendant's athletic director, may be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.
3. Tony Madlock, Former Men's Head Basketball Coach, may be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.
4. Derrick Mallison, Assistant Men's Basketball Coach, may be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.
5. Mardracus Wade, Assistant Men's Basketball Coach, may be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.

6. Raheem Waller, Assistant Men's Basketball coach, may be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.

7. Ed Stephens, Assistant Men's Basketball Coach and Director of Player Development, may be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.

8. Ervin Monier, Associate Head Coach of Women's Basketball, may be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.

9. Akia Stanton, Assistant Women's Basketball Coach, may be called upon to testify as to her knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.

10. Erika Stokes, Volunteer Assistant Women's Basketball Coach, may be called upon to testify as to her knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.

11. Melisa Dawson, former Executive Associate Athletics Director and Senior Women's Administrator, may be called on to testify to Title 9 violations at SC State University.

12. Melvin Hines, former Athletics employee, may be called on to testify to Title 9 violations at SC State University.

13. Theresa Laurente, former Director of Compliance, may be called upon to testify to Title 9 violations at SC State University.

14. Dawn Barnes, Volleyball Coach, may be called on to her knowledge of sex-based disparities as a coach at SC State University.

15. Plaintiff reserves the right to identify additional witnesses during the discovery process and to call upon any witnesses identified by any party in their Local Rule 26.03 Interrogatory responses or discovery responses.

**(3) The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered).**

**RESPONSE:**

Marlynn R. Jones, Esq. has been consulted with respect to Title IX Compliance at Defendant.

**(4) A summary of the claims with statutory and/or case citations supporting the same.**

**RESPONSE:**

### Violation of Title IX

Title IX of the Education Amendments of 1972 to the Civil Rights Act provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]

20 U.S.C. § 1681(a). Applying Title IX to intercollegiate athletics, The Federal Office of Civil Rights (OCR) has adopted regulations requiring educational institutions receiving federal funds to "provide equal athletic opportunity for members of both sexes." 34 C.F.R. § 106.41(c). 34 C.F.R. § 106.41(c) specifies ten (10) non-exclusive factors that may be considered in the determination of equal athletic opportunity:

    a.    Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes;

    b.    The provision of equipment and supplies;

    c.    Scheduling of games and practice time;

    d.    Travel and per diem allowance;

    e.  Opportunity to receive coaching and academic tutoring;

    f.  Assignment and compensation of coaches and tutors;

    g.  Provision of locker rooms, practice and competitive facilities;

    h.  Provision of medical and training services;

    i.  Provision of housing and dining facilities and services; and

    j.  Publicity.

Other factors to be considered are a school's "failure to provide necessary funds for teams for one sex" and recruiting.

  The OCR Policy Interpretation sets forth three areas of compliance under Title IX as it relates to college sports: (1) equal accommodation of student interests and abilities; (2) equal athletic financial assistance; and (3) equal treatment and benefits. According to the Policy Interpretation, compliance in the area of the first prong of equal athletic participation opportunities is determined under the following three-part test:

  a. whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments;

  b. where the members of one sex have been and are under-represented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or

  c. where the members of one sex are under-represented among intercollegiate athletes and the institution cannot show a continuing practice of program expansion such as that cited above, whether it can be demonstrated that the interests and abilities of

5

        the members of that sex have been fully and effectively accommodated by the present program.

See 44 Fed. Reg. 71,418.

This three-part test was further clarified after notice and comment in OCR's 1996 Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test (the "1996 OCR Clarification"), making clear that "participation opportunities must be real, not illusory." The Regulations require that sponsors of intercollegiate athletics (such as Defendant) take such remedial actions as are necessary to overcome the effects of sex discrimination in violation of Title IX. See 34 C.F.R. §106.3(a).

The Regulations also require that federal fund recipients like Defendant adopt nondiscrimination policies and grievance procedures, appoint and train Title IX officers to receive and investigate sex discrimination complaints, and disseminate this information to all students, faculty, and employees. 34 C.F.R. §§106.8 & 106.9.

Section 106.51(a)(3) states: "A recipient shall not enter into any contractual or other relationship which directly or indirectly has the effect of subjecting employees or students to discrimination."

Title IX's prohibition of discrimination on the basis of sex covers, among other things: compensation, job assignments, fringe benefits, and any other term, condition, or privilege of employment. 34 C.F.R. §106.51(b). Title IX prohibits sex discrimination in employment based upon the sex of the employee and based upon the sex of the students taught or athletes coached.

### Title IX Retaliation

Plaintiff alleges retaliation in violation of Title IX. When a funding recipient retaliates against a person *because* she complains of sex discrimination, this constitutes intentional

"discrimination" "on the basis of sex," in violation of Title IX. A prima facie retaliation claim must show (1) engagement in a protected activity; (2) an adverse action; and (3) a causal connection between the protected activity and the adverse action. *See Coleman v. Md. Court of Appeals,* 626 F.3d 187, 190 (4th Cir.2010) (applying this retaliation framework to Title VII claims). The Court may look to judicial interpretations of Title VII "in shaping the contours of a private right of action under Title IX." *Preston,* 31 F.3d at 207. Further, since the Supreme Court decided *Jackson* and held that Title IX includes a private right of action for retaliation, 544 U.S. at 173–84, 125 S.Ct. 1497, several United States courts of appeals have applied a Title VII framework to Title IX retaliation claims. *See Milligan v. Bd. of Trs. of S. Ill. Univ.,* 686 F.3d 378, 388 (7th Cir.2012); *Emeldi v. Univ. of Or.,* 698 F.3d 715, 724 (9th Cir.2012); *Papelino v. Albany Coll. of Pharm. of Union Univ.,* 633 F.3d 81, 91–92 (2d Cir.2011); *See also Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481, 489 (D. Md. 2015).

Protected activity comes in two varieties: "opposition" and "participation." The "participation" clause refers to the phrase in 42 U.S.C. § 2000e-3 that protects employees who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." The scope of protection for activity falling under the "participation" clause is broader than that falling under the "opposition" clause. *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, at 259 n.4 (4th Cir. 1998).

### Violation of the Equal Pay Act

Plaintiff alleges unfair pay on the basis of her Gender under the Equal Pay Act. 29 U.S.C. § 206(a). The equal pay act provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than

> the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . .

29 U.S.C. § 206(d)(1). Generally, a plaintiff need only show: (1) that different wages are paid to employees of the opposite sex; (2) in an establishment where the employees do equal work which requires equal skill, effort, and responsibility; and (3) that the employees have similar working conditions. *See, Heller v. Elizabeth Forward School District*, 182 Fed. Appx. 91, 2006 WL 1489179 (3d Cir. May 31, 2006).

**(5) Absent special instructions from the assigned judge, the parties shall propose dates for the following deadlines listed in Local Civil Rule 16.02.**

    **i. Exchange of Fed. R. Civ. P. 26(a)(2) Expert Disclosures**
    **ii. Completion of discovery.**

**RESPONSE:**

    Plaintiff and Defendant consulted and agreed upon the Scheduling Order filed in this case.

**(6) The parties shall inform the Court whether there are any special circumstances which would affect the time frames applied in preparing the scheduling order.**

**RESPONSE:**

    The parties are unaware of any special circumstances at this time.

**(7) The parties shall provide any additional information requested in the Pre-Scheduling Order (Local Civil Rule 16.01) or otherwise requested by the assigned judge.**

**RESPONSE:**

    Not applicable.

**CROMER BABB PORTER & HICKS, LLC**

BY:    s/Paul Porter
       Paul Porter (#11504)
       1418 Laurel Street, Suite A
       Post Office Box 11675
       Columbia, South Carolina 29211
       Phone: (803) 799-9530
       Fax: (803) 799-9533
       paul@cbphlaw.com
*Attorney for Plaintiff*

June 14, 2022
Columbia, South Carolina

9